NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE CATHERINE TINA LA, <br><br> Petitioner. | Case No. 23-mc-33 (RK) <br><br> **<u>MEMORANDUM OPINION</u>** |

**<u>KIRSCH, District Judge</u>**

  **THIS MATTER** comes before the Court upon the Petition for Amendment of Naturalization Certificate filed by Petitioner Catherine Tina La on August 18, 2023. (ECF No. 1.) The Petition seeks the Court to correct Petitioner's date of her birth as recorded on her Certificate of Naturalization issued by the Clerk of this Court on December 17, 1984. (*Id.*) In support of her Petition, Petitioner submitted a moving brief, (ECF No. 1), as well as six exhibits, (ECF Nos. 1-4 to 1-9). The Court ordered Petitioner to serve a copy of the Petition and its accompanying exhibits on the United States Citizenship and Immigration Services ("USCIS"), District Director. (ECF No. 2.) On October 2, 2023, an Assistant United States Attorney entered an appearance in the matter and filed a letter to "inform the Court that the Government has completed its review, and it takes no position as to the Petition to amend her naturalization certificate." (ECF No. 4.)[1] On November 27, 2023, Petitioner and her counsel appeared before the Court, during which Petitioner affirmed that the contents of her declaration in support of her Petition were accurate and counsel for the

---

[1] On November 10, 2023, Petitioner filed a Proposed Order, seeking the Court to grant her Petition, order her to file a Form N-565, Application for Replacement Naturalization/Citizenship with the USCIS, and order the USCIS to place a copy of this Opinion and its accompanying Order with Petitioner's file. (ECF No. 6.)

United States indicated that the USCIS consented to the Court granting the Petition. For the reasons set forth below and on the record on this date, the Petition is **GRANTED**.[2]

I.   BACKGROUND

The Court draws the below facts from the declaration Petitioner submitted in support of her Petition that describe her harrowing, death-defying journey from Vietnam to the United States, where she has lived since arriving as a refugee in 1979. (*See* Pet'r's Decl., Ex. 2 to Pet., ECF No. 1-5.) Petitioner, the eldest of seven children, was born in Tra Vinh, Vietnam on November 27, 1961 to Nganh La and Huong Ton Ly. (*Id.* ¶ 5.) Petitioner's family operated a third-generation grocery wholesale business in Tra Vinh where her father also served as a local bureaucrat under the Republic of Vietnam ("South Vietnam") government. (*Id.* ¶¶ 8–9.) Petitioner and her family were living in Vietnam on April 30, 1975, when the United States military withdrew from the country and the government of South Vietnam fell to the Democratic Republic of Vietnam ("North Vietnam") government. (*Id.* ¶ 6.)

Petitioner's declaration states that her family both witnessed brutality and suffered retaliation from the North Vietnamese government. (*Id.* ¶ 7.) After the government of South Vietnam fell, the North Vietnamese government immediately arrested Petitioner's father and imprisoned him in a "re-education camp" and forced Petitioner's family's business to close. (*Id.* ¶ 8.) Petitioner's father was released six months after his arrest but remained on the government's "blacklist," and the family was forced to leave their home in Tra Vinh to perform hard labor in the countryside. (*Id.* ¶¶ 9–10.) For these few years living in the "wilderness," Petitioner and her siblings had little food and were barred from attending school. (*Id.* ¶ 10.) In 1977, Petitioner and

---

[2] Also pending before the Court is Petitioner's Motion to Seal the docket filed on November 10, 2023. (ECF No. 5.) For the reasons set forth on the record at the November 27, 2023 hearing, Petitioner's Motion to Seal is DENIED without prejudice. Petitioner may refile an appropriate motion that complies with Local Civil Rule 5.3.

her family attempted to flee Vietnam by boat but were captured and detained by the government. (*Id.*) Petitioner and her family were eventually released but resolved to attempt to escape the country again. (*Id.*)

At some point in 1979, Petitioner and her eight family members made a second attempt to escape Vietnam. (*Id.* ¶¶ 10–11.) Petitioner and her family, along with 265 other passengers, boarded a wooden boat that would carry them away from Vietnam without any certainty of where it was headed. (*Id.* ¶¶ 12, 13.) The refugees on the boat were crowded shoulder-to-shoulder and had barely enough food and water to make the journey. (*Id.* ¶ 12, 14.) On the third day at sea, a pirate ship raided the wooden boat, during which Petitioner hid with the women and children under the deck while the men threw the passengers' possessions to the pirates to appease them. (*Id.* at 14.)

The pirates badly damaged the refugees' boat during the attack, and it began taking on water. (*Id.*) The boat sank off the coast of Malaysia, and Petitioner and the other refugees arrived in Malaysia, dehydrated and malnourished, on January 29, 1979. (*Id.* ¶¶ 15–16, 18.) Petitioner's parents attempted to return to the boat to retrieve their belongings, including the birth certificates and vital documents they had brought, but the boat had already sunk. (*Id.* ¶ 17.) Petitioner and her family were taken to a refugee camp on a Malaysian island, where they stayed for months. (*Id.* ¶¶ 18–19.) At the camp, Petitioner's father, who did not speak English, worked with an interpreter to file immigration documents for Petitioner and her family to immigrate to the United States. (*Id.* ¶ 20.) Petitioner, who was a teenager at the time, could not speak English and did not interact with the interpreter. (*Id.*) Petitioner believes this was when her birth date was first incorrectly recorded. (*Id.*)

Petitioner and her family arrived in the United States on September 20, 1979. (*Id.* ¶ 21.) Petitioner first arrived in San Francisco, where she received a legal document she later learned was her Form I-94 card. (*Id.*)³ After settling in St. Charles, Missouri, Petitioner was granted legal permanent resident status. (*Id.* ¶¶ 21–22.)⁴ Petitioner's immigration documents showed her date of birth as January 5, 1964, which Petitioner realized was incorrect. (*Id.* ¶ 22.) However, because Petitioner did not speak English, had no documents proving her actual date of birth, and was "relieved and thankful" to have escaped Vietnam to the United States alive, she did not feel able to challenge the recorded date of birth. (*Id.* ¶ 21.) Petitioner was naturalized as a United States citizen in 1984, and her naturalization certificate again gave her date of birth as January 5, 1964. (*Id.* ¶ 23.)⁵

Petitioner acknowledges that she did not object or otherwise indicate to the United States immigration authorities that the date of birth on her Form I-94 or certificate of naturalization was incorrect. (*Id.* ¶¶ 21–22.) Petitioner states that she had "desperately" wanted to correct the date of birth listed on her immigration records, but that it "was not an urgent matter" while living in the United States. (*Id.* ¶ 24.) Petitioner believed that she would need a copy of her birth certificate to prove her real birth date, but that she was unable to return to Vietnam to do so because she had to work and take care of her young children. (*Id.*) Moreover, during the first part of Plaintiff's life in

---

³ The copy of Petitioner's Form I-94 document submitted with her Petition confirms this information. (*See* Ex. 3 to Pet., ECF No. 1-6.) The document gives Petitioner's birth location as Tra Vinh, Vietnam and her birth year as 1964—no day or month of birth is recorded on the document. (*Id.*) The I-94 further states that Petitioner's parole into the United States was "indefinite" and that the purpose of admission was as a "Viet Refugee." (*Id.*)

⁴ A copy of Petitioner's "Memorandum of Creation of Record of Lawful Permanent Residence" was included as an exhibit to the Petition. (*See* Ex. 5 to Pet., ECF No. 1-8.) The document indicates that it was approved by the Immigration and Naturalization Service on October 26, 1981, reflects Petitioner's date of birth as January 5, 1964, and states that she was a lawful permanent resident as of September 20, 1979. (*Id.*)

⁵ Petitioner's certificate of naturalization, included as an exhibit to her Petition, was issued on December 17, 1984 by the Clerk of the Court for the United States District Court for the District of New Jersey. (*See* Ex. 4 to Pet., ECF No. 1-7.)

the United States, until 1995, the United States had no diplomatic relationship with the Socialist Republic of Vietnam.[6] Petitioner's father returned to Vietnam in 2007 and brought her back a copy of her birth certificate, which was the first time Petitioner had seen it. (*Id.* ¶ 25.)[7]

Petitioner met with an employee of the Social Security Administration in 2008 in an attempt to have her date of birth corrected. (*Id.* ¶ 26.) Petitioner was asked to provide additional documentation but was unable to because she was taking care of her young children at the time. (*Id.*) Petitioner initially attempted to seek amendment of her naturalization certificate herself before eventually hiring an attorney in 2023. Petitioner states that she was unable to seriously seek to correct her documents for years because she was busy working, raising her children, and caring for her sick husband who eventually passed away from cancer in 2019. (*Id.* ¶¶ 26–27.) Petitioner was only recently able to afford hiring an attorney to assist her in her present suit. (*Id.*)

Petitioner declares that she has not received any immigration benefits, or any other benefits from the United States government, by using the incorrect date of birth originally recorded on her immigration documents. (*Id.* ¶ 30.) Petitioner states that her only wish is for her "tombstone and

---

[6] Petitioner includes a two-page timeline of "Key dates in Vietnam-US relations" that appears to be published by the Embassy of Vietnam and printed from its website on October 23, 2008. (*See* Ex. 6 to Pet., ECF No. 1-9.) The timeline states that the United States and Vietnam reestablished diplomatic relations in 1995. (*Id.*) The Government did not object to the Court's reliance on these dates, and thus the Court accepts the timeline for the purpose of noting that the United States and Vietnam did not have diplomatic relations until 1995.

[7] The copy of Petitioner's birth certificate included with her Petition reflects her birth date of November 27, 1961 at "Maternity hospital – Doctor Nguyen Van Khoe" in Phu Vinh, Vietnam. (Ex. 1 to Pet., ECF No. 1-4) The certificate further shows that it was "[c]opied from the birth certificate book" on September 17, 2007, the year Petitioner's father returned to Vietnam. (*Id.*) Petitioner offered the Vietnamese version of the copy of her birth certificate as well as an English-language translation with a certification of translation from the Consul of the Consulate of Vietnam and First Secretary of Vietnam's Permanent Mission to the United Nations, dated September 27, 2022. (*Id.*)

The Court notes that Petitioner's name, recorded on her birth certificate and Form I-94 is Can Tu La. Petitioner states that she requested her name be changed to Catherine Tina La when she was naturalized, and that her New Jersey Department of Motor Vehicle, Social Security Administration, and immigration records all have her changed name. (Pet'r's Decl. ¶¶ 2, 23.)

final documents [to] reflect [her] actual date of birth. (*Id.* ¶ 28.) Petitioner is also unable to obtain a Real ID until her date of birth is corrected on her immigration documents. (*Id.*)

## II.     **JURISDICTION**

The Immigration and Naturalization Act of 1990 (the "INA") vested "sole authority" over naturalization of persons as citizens in the executive branch. Pub. L. No. 101-649, § 401(a) (1990) (codified at 8 U.S.C. § 1421(a)). Where the USCIS has issued a naturalization certificate, a federal court lacks subject matter jurisdiction to amend it. *See Yu-Ling Teng v. Dist. Dir., U.S. Citizenship & Immigr. Servs.*, 820 F.3d 1106, 1109 (9th Cir. 2016) ("Nothing in the [INA] grants us jurisdiction to amend an agency-issued certificate of naturalization or to order USCIS to do so.").

However, the federal courts retain jurisdiction to modify a court-issued certificate of naturalization issued prior to the passage of the INA. *See Collins v. U.S. Citizenship & Immigr. Servs.*, 820 F.3d 1096, 1100 (9th Cir. 2016) (holding that federal courts have jurisdiction pursuant to 8 U.S.C. § 1451(i) (1988) "to correct, reopen, modify, or vacate naturalization certificates that . . . were issued by a federal court prior to the passage of the [INA]" ). Although the Third Circuit Court of Appeals has not addressed this question, courts within this Circuit have recognized their continued jurisdiction to amend naturalization certificates issued by federal courts prior to the INA's enactment. *See Sinha v. U.S. Citizenship & Immigr. Servs.*, No. 10-2150, 2011 WL 4594144, at *1 (D.N.J. Sept. 30, 2011) (holding that the Court had jurisdiction to amend a naturalization certificate it had issued prior to the INA's passage); *In re Motion to Correct Certificate of Naturalization*, No. 06-265, 2006 WL 2882574, at *1 (D.N.J. Oct. 3, 2006) (accepting the Court's authority to amend a naturalization certificate but denying the petition because the petitioner "put forth no facts to support his claim that his birth date should be changed"); *In re Rose*, No. 94-0165, 1994 WL 502501, at* 1 (E.D. Pa. Sept. 15, 1994) (holding

6

that courts "have entertained petitions to change the date of birth recorded in a naturalization petition or certificate . . . consistent with applicable regulations and after proper notice").[8]

Therefore, the Court has jurisdiction to hear the Petition to amend the date of birth on Petitioner's certificate of naturalization because it was issued by this Court on December 17, 1984, prior to the INA's passage. (*See* Ex. 4 to Pet., ECF No. 1-7.)

### III.  STANDARD OF REVIEW

Courts asked to correct the name or date of birth on a certificate of naturalization look to federal regulation that governs amending a certificate of naturalization. *See In re Motion to Correct Certificate of Naturalization*, 2006 WL 2882574, at *1. Federal regulations are generally "resistant to changing birth dates for any reason other than clerical error on the part of U.S. officials." *In re Motion to Correct Certificate of Naturalization*, 2006 WL 2882574, at *1 (quoting *Varghai v. INS, Dist. Director*, 932 F. Supp. 1245, 1246 (D. Or. 1996)); *see also* 8 C.F.R. §§ 338.5(a), (e). Courts following the guidance of federal regulations are likewise "resistant" to such corrections. *In re Motion to Correct Certificate of Naturalization*, 2006 WL 2882574, at *1 (collecting cases).

However, even in the absence of a clerical error, courts in this District have contemplated amending the date of birth on a certificate "where the plaintiff provides unequivocal evidence as to his true date of birth or where there is no evidence of fraud and no prejudice results to the government." *In re Motion to Correct Certificate of Naturalization*, 2006 WL 2882574, at *2; *see also Sinha v. U.S. Citizenship & Immigr. Servs.*, 2011 WL 4594144, at *2 (citing *In re Motion to Correct Certificate of Naturalization*). Petitioner bears the burden of establishing that the birth date on her certificate of naturalization is incorrect. *See In re Motion to Correct Certificate of*

---

[8] As noted above, the INA vests the executive branch with sole authority to issue and amend naturalization certificates issued after the INA's passage. If the United States interpreted the Petition as an invitation for the Court to impinge on the executive branch's exclusive prerogative, it would have raised an objection to the relief Petitioner seeks, rather than consenting to the Court granting the relief sought.

*Naturalization*, 2006 WL 2882574, at *2; *see also Liu v. I.N.S.*, No. 98-mc-139, 1998 WL 809037, at *2 (N.D.N.Y. Nov. 17, 1998) (describing the petitioner's burden as "stringent" and requiring "unequivocal evidence as to the applicant's true date of birth"). One District Court, surveying cases from across the country in which petitioners sought courts to amend their certificates of naturalization, noted that the cases do not establish a precise standard that must be met to deserve relief. *See Hussain v. U.S. Citizenship & Immigr. Servs.*, 541 F. Supp. 2d 1082, 1086 (D. Minn. 2008). However, the Court's survey is instructive:

> Where courts have denied petitions to amend, the evidence supporting the petition was quite weak—sometimes bordering on unbelievable—and there was often some indication of fraud or bad faith on the petitioner's part. . . . Conversely, in cases in which courts have granted petitions to amend, there was strong evidence that the birth date on the certificate was incorrect, and there was no indication that the petitioner had acted fraudulently or in bad faith.

*Id.* (citations omitted). This Court agrees with the *Hussain* Court's conclusion that each such case "involves unique facts . . . reflecting the unique paths to citizenship taken by the various petitioners" that renders "distilling a set of abstract legal principles from these decisions [] difficult." *Id.* at 1087.

## IV.  DISCUSSION

The Court finds that the uncontested evidence Petitioner has offered of her true date of birth and the unique story immigrating to the United States that explains why her original immigration documents contained an incorrect date establish that her certificate of naturalization should be amended.

First, Petitioner offers compelling evidence that the date of birth on her current immigration documents, January 5, 1964, is incorrect, and that her actual date of birth is November 27, 1961. The Petition includes an official birth record copied from the birth certificate book in Vietnam in

2007, when Petitioner represents her father returned to Vietnam and attempted to retrieve her original vital records. (Ex. 1 to Pet., ECF No. 1-4.) A certified English-language translation of the birth certificate was submitted, reflecting Petitioner's date of birth as November 27, 1961. (*Id.*) The Court finds that the certified translation of Petitioner's birth records, combined with her declaration in support of same, is sufficient to meet this burden. *See, e.g.*, *Lai Dinh v. United States Citizenship & Immigr. Servs.*, No. 19-1455, 2021 WL 516803, at *2 (E.D. Cal. Feb. 11, 2021) (finding sufficient evidence of a petitioner's date of birth from a "birth certificate issued by a court in Vietnam, along with a notarized English translation" and an accompanying declaration); *Thao Ngoc Phuong Tu v. United States Citizenship & Immigr. Servs.*, No. 19-mc-39, 2019 WL 2344219, at *3 (N.D. Ga. Apr. 15, 2019) (finding "clear and convincing evidence" of petitioner's correct date of birth through her Vietnamese "birth certificate, which does not appear to have been available prior to the earlier proceedings"); *Nguyen v. U.S. Dep't of Homeland Sec.*, No. 06-mc-118, 2007 WL 2156649, at *4 (N.D.N.Y. July 25, 2007) (finding that the petitioner had offered "unequivocal evidence" of his date of birth through testimony and a "certified copy of his [Vietnamese] birth certificate").

Second, the Court finds no suggestion that Petitioner's tolerance of the incorrect date of birth on her immigration documents constituted fraud or that granting the Petition would prejudice the government. Petitioner articulates clear, understandable reasons why the incorrect date was first recorded. Petitioner fled oppression by the Vietnamese government when she was only a teenager. Petitioner's family only escaped by setting to sea in a cramped, under-provisioned wooden boat holding 265 passengers. When pirates attacked and sunk the boat off the coast of Malaysia, Petitioner's birth certificate was lost. While waiting for almost a year in a refugee camp in Malaysia, Petitioner's birth date was first incorrectly recorded, which is understandable given

that neither Petitioner nor anyone in her family spoke English and had to work through a translator when submitting paperwork. *See Lai Dinh*, 2021 WL 516803, at *3 (finding an absence of fraud because the petitioner "aver[red] that she believed her original birth certificate was lost when she fled from Vietnam"); *Binh Quang Le v. U.S. Citizenship & Immigr. Servs., Dist. Dir.*, No. 11-01871, 2011 WL 3678909, at *1 (N.D. Cal. Aug. 22, 2011) (crediting the petitioner's assertion that the error in the date of birth on his certificate of naturalization "was an honest mistake that originated, unbeknownst to him, during his stay at a refugee camp in Malaysia prior to his arrival in the United States").

The fact that Petitioner affirmed her birth date as 1964 when she was naturalized in 1984 does not require finding that Petitioner fraudulently represented her birth date to the government. *See, e.g.*, *Nguyen*, 2007 WL 2156649, at *2 (granting amendment to date of birth despite the fact that the petitioner "admit[ted] that he used this incorrect birth date on every formal governmental document"). The Court credits Petitioner's assertion that when she finally arrived in the United States after her harrowing escape from Vietnam, she was grateful to be alive and hesitant to object when she first noticed that her Form I-94 card listed an incorrect date of birth. Similarly, when Petitioner was naturalized in 1984, she did not contest her birth date, despite the fact that she knew that date to be incorrect, because she believed that she would need a copy of her birth certificate. Petitioner had no proof of her date of birth, and in 1984, the United States and Vietnam had not normalized relations such that Petitioner would be able to return to Vietnam to seek proper documentation.

The fact that Petitioner waited until 2023—approximately twenty-five years after the United States and Vietnam normalized relations—to apply to this Court to amend her certificate also does not evidence fraud or prejudice to the United States. Attempting to navigate the civil

10

immigration system can be overwhelming, especially when attempted without assistance of an attorney. The everyday life challenges Petitioner points to in her declaration—working, raising children, taking care of her sick husband, and paying for his medical care—understandably prevented her from spending the time and money necessary to seek an amendment to her certificate of naturalization. Even if Petitioner could have acted with more alacrity in moving this Court to amend her certificate, such negligence does not rise to the level of fraud or prejudice such that her Petition should be denied.

    The Court also finds no prejudice to the Government, either in how a younger age could have helped Petitioner in seeking citizenship or how now an older age could help Petitioner seeking an amended certificate. Petitioner represents that her reason for seeking amendment is to secure the dignity of having her government-issued documents accurately reflect her age, and also to permit her to obtain a Real ID. The Court finds, and the United States points to, no reason to doubt Petitioner's declaration that she has not received any benefit from the United States government by using the incorrect date of birth. The USCIS noted in its written submission that it "review[ed]" the Petition and "takes no position" on the Petition, (ECF No. 4), and further stated on the record at the hearing held on November 27, 2023 that it consented to the Court granting the Petition.

## V.      CONCLUSION

For the reasons set forth above, the Petition for Amendment of Petitioner's Naturalization Certificate (ECF No. 1) is **GRANTED**. Petitioner's Motion to Seal (ECF No. 5) is **DENIED** without prejudice. An appropriate Order accompanies this Memorandum Opinion.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: November 27, 2023